UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PATRICE LOUISE BJORKMAN,          :
                                  :CIVIL ACTION NO. 3:16-CV-778
            Plaintiff,            :
                                  :(JUDGE CONABOY)
            v.                    :
                                  :
CAROLYN W. COLVIN,                :
Acting Commissioner of           :
Social Security,                 :
                                  :
            Defendant.            :
                                  :

---

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  (Doc. 1.)  She alleged disability beginning on September 21, 2011.  (R. 21.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Richard Zack, concluded in his June 6, 2015, decision that Plaintiff had the severe impairments of "status post surgery on right knee for meniscal tear, recurrent tear, tri-compartment osteoarthritis of right knee, degenerative joint disease of right knee and mild degenerative joint disease of right knee and mild degenerative joint disease of her hands" which did not alone or in combination (including her non-severe impairments) meet or equal the severity of one of the listed impairments.  (R. 24.)   (R. 23-26.)  He also found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain nonexertional limitations and that she was capable of performing her past relevant work as an

information clerk.  (R. 24-29.)  Alternatively, he found at step five that Plaintiff had acquired skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.  (R. 30.)  ALJ Zack therefore found Plaintiff was not disabled from September 21, 2011, through the date of the decision.  (R. 31.)

With this action, Plaintiff asserts that the Acting Commissioner's decision should be reversed or remanded for the following reasons: 1) the ALJ's conclusion that Plaintiff was capable of performing light work was not supported by substantial evidence; and 2) the ALJ's conclusion that Plaintiff's past relevant work included the job of information clerk is legally erroneous and not supported by substantial evidence.  (Doc. 14 at 8.)   After careful review of the record and the parties' filings, the Court concludes this appeal is properly denied.

## I. Background

### A.    *Procedural Background*

Plaintiff protectively filed for DIB on September 2, 2013. (R. 21.)  The claim was initially denied on January 6, 2014, and Plaintiff filed a request for a hearing before an ALJ on January 22, 2014.  (*Id.*)

ALJ Zack held a hearing on June 3, 2015.  (*Id.*)  Plaintiff, who was represented by an attorney, testified as did Vocational Expert ("VE") Karen Kane.  (*Id.*)  As noted above, the ALJ issued

2

his unfavorable decision on June 6, 2015, finding that Plaintiff was not disabled under the Social Security Act during the relevant time period.  (R. 38.)

Plaintiff's request for review of the ALJ's decision was dated August 10, 2015.  (R. 14-15.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 7, 2016.  (R. 10-14.)  In doing so, the ALJ's decision became the decision of the Acting Commissioner.  (R. 10.)

On May 5, 2016, Plaintiff filed her action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant filed her answer and the Social Security Administration transcript on July 18, 2016.  (Docs. 10, 11.)  Plaintiff filed her supporting brief on August 30, 2016.  (Doc. 14.)  Defendant filed her brief on October 3, 2016.  (Doc. 15.)  Plaintiff filed a reply brief on October 21, 2016.  (Doc. 18.)  Therefore, this matter is fully briefed and ripe for disposition.

**B.   *Factual Background***

Plaintiff was born on May 17, 1958, and was fifty-three years old on the alleged disability onset date.  (R. 30.)  Plaintiff has a high school education and has past relevant work as a corrections officer, data entry clerk, and information clerk.  (*Id.*)  Plaintiff indicated that she stopped working on November 21, 2012, because light duty work was no longer available.  (R. 148.)  She also stated that she believed her condition became severe enough to keep

3

her from working on the same date.   (*Id.*)

## 1.   **Impairment Evidence**

On September 26, 2011, Plaintiff saw Kenneth J. Brislin, M.D. of OAA Orthopaedic Specialists ("OAA"), due to a right knee injury which occurred at work on September 21, 2011.  (R. 440-43).  Dr. Brislin noted that Plaintiff "had remote history of right knee arthroscopy" by another physician and at the time of the office visit she complained of a buckling sensation and weakness.  (R. 441.) Dr. Brislin reviewed x-rays taken that day, which showed advanced degenerative changes in the medial compartment of her knee and planned to schedule MRI for further evaluation.  (R. 443).  The MRI done on September 28, 2011, showed tricompartmental osteoarthritis, complex tear meniscus with marked articular cartilage loss within the medial compartment, and articular cartilage loss within the patellofemoral compartment (R. 438).

When Plaintiff saw Dr. Brislin on October 24, 2011, she reported she had little improvement, slow progress with physical therapy, and no response to an injection.  (R. 437.)  Dr. Brislin recommended surgery and gave her sedentary work-restrictions, adding that he told her she may never get back to full duty regardless of operative or nonoperative management.  (R. 437.)

In a Physician's Report of Return to Work completed by Dr. Brislin on October 24, 2011, he concluded that Plaintiff could return to sedentary work on October 31, 2011, and she could sit

4

constantly, stand and walk up to thirty-three percent of the day, and could never bend, kneel, crawl, or climb.  (R. 377).

In late 2011 and early 2012, Plaintiff received physical therapy on her right knee at Phoenix Rehabilitation & Health Services ("Phoenix").  (R. 191-222.)  In the Phoenix Discharge Summary dated January 25, 2012, Plaintiff rated her pain as 0/10 and said he had not peaked above that level in the preceding week. (R. 198.)  She also reported only one episode of instability in the preceding week, adding that stair ascent was less difficult than descent, her leg definitely felt stronger, and she felt good on the bike.  (R. 198.)

On January 29, 2012, Plaintiff returned to Dr. Brislin, who observed that Plaintiff continued to have significant limitations, she could not do stairs without pain and a sense of instability, and could not tolerate bending, squatting, or kneeling with the knee.  (R. 426.)  He noted that she experienced some improvement with therapy but the therapist thought she had plateaued and there was nothing further she could offer.  (*Id.*)  Before making further recommendations, Dr. Brislin planned to give Plaintiff another two months, at which time she would be six months from injury.  (*Id.*)

Dr. Brislin examined Plaintiff on March 22, 2012, and reported no change in her symptoms.  (R. 351.)  Plaintiff told him that she was unable to perform her regular duties as a prison guard and she was working in the archives, a position for which she was able to

meet the demands.  (R. 351.)  Dr. Brislin concluded that Plaintiff had reached maximum medical improvement regarding the right knee meniscal tear and he did not feel that surgical intervention would result in further improvement of her symptoms.  (*Id.*)  He also believed that a functional capacity evaluation ("FCE") was warranted if Plaintiff did not feel she could return to her preinjury job, and he did not think she would be able to do that job because he did not anticipate that her knee symptoms would improve.  (*Id.*)  Dr. Brislin planned to make a further recommendation after the FCE.  (*Id.*)

Dr. Brislin's colleague at OAA, Joanne Dileo, OTR/L, CHT, completed the FCE on April 11, 2012.  (R. 331-48, 370.)  Plaintiff described weakness, "locking," and pain in her right knee.  (R. 348.)  She reported that she wore a knee support occasionally when she was on her feet a lot, walking and stairs provoked the pain, and she avoided activities that cause pain in her right knee including lifting, carrying, vacuuming, household cleaning, stairs, and yard work.  (*Id.*)  Plaintiff said when the pain occurred she limited all activity until it resolved and, at the time of the evaluation, her overall tolerance for activity was very low.  (*Id.*) Ms. DiLeo observed that Plaintiff gave "near full, though not entirely full, effort" during the FCE.  (R. 331, 346).  She concluded that Plaintiff had the following capabilities: she had no apparent limitations when standing in one spot, sitting, reaching

6

overhead, and reaching below her knee bending from the waist; she could walk short distances on level terrain; she could not tolerate crawling, kneeling, squatting, lifting from floor to waist; she could occasionally lift thirty pounds and frequently lift fifteen pounds from waist to shoulder; carrying fifty pounds a distance of thirty feet provoked pain; and she could push and pull a maximum of thirty-three pounds.  (R. 370.)   Ms. DiLeo concluded that Plaintiff could not return to her job as a corrections officer, but could work at the "Light Medium" classifications of work according to the Department of Labor's Dictionary of Occupational Titles." (R. 331-32, 370).

On April 30, 2012, Nancy K. Spangler, M.D., also of OAA, concluded in a Physician's Report of Return to Work that Plaintiff could continue working.  (R. 368.)  She specifically found the following: she could sit, reach overhead and perform repetitive foot and hand movements constantly and she could not push and pull arm controls repetitively; she could stand and walk for short periods; she could bend frequently; and she could never kneel, crawl, or climb.  (R. 368.)  Dr. Spangler commented that Plaintiff could not lift any weight from the floor, could occasionally lift fifty pounds from the waist, she should limit stairs and avoid them if possible, she should not frequently go from sitting to standing and back to sitting, and she could occasionally push and pull thirty-three pounds.  (*Id.*)  On May 1, 2012, Dr. Spangler reviewed

7

Plaintiff's FCE results with her. (R. 417.)  Dr. Spangler noted that Plaintiff was upset that the FCE report concluded that she could not return to her job and the limitations were permanent. (*Id.*)  Dr. Spangler told Plaintiff she would discuss this further with Dr. Brislin.  (*Id.*)

In May 2012, Plaintiff had an appointment with her primary care physician, Cheryl Lipson, M.D., of Carbon Medical Associates. (R. 241-43.)  Plaintiff presented for follow up of her right knee pain and asked for a renewal of her handicapped parking pass.  (R. 241.)  Upon musculoskeletal examination, Dr. Lipson recorded that Plaintiff had "[n]o weakness [and] significant right lower knee pain with pain and hesitation on anterior and posterior drawer without instability."  (R. 242.)  Dr. Lipson counseled that Plaintiff could not lift or return to heavy duty, she could continue working at light duty, and she should follow up with orthopedics. (*Id.*)

On November 9, 2012, Thomas D. DiBenedetto, M.D., conducted an Independent Medical Examination in connection with Plaintiff's workers' compensation claim.  (R. 136-39.)  He reviewed Plaintiff's medical history and conducted a physical examination observing knee pain, sprain, knee arthritis, and torn medial meniscus.  (R. 137.) He concluded that Plaintiff had reached maximum medical improvement, she could not return to her position as a corrections officer but she could work at sedentary, light and medium capacity.

(R. 138.)

When Plaintiff saw Melanie Henderson, PA-C, at Carbon Medical Associates on January 24, 2013, she had no concerns other than pain in both hands and no knee problems were recorded upon musculoskeletal examination.  (R. 232-33, 485-86.)

On February 21, 2013, Plaintiff met with Robert B. Grob, D.O., to discuss her right knee pain.  (R. 462.)  She reported that her knee felt unstable, it caused problems when she walked steps and when kneeling.  (*Id.*) He wanted to rule out a retear of the meniscus.  (*Id.*)  On February 28, 2013, Dr. Grob reviewed the MRI and diagnosed a possible re-tear of the medial meniscus.  (R. 461.) Plaintiff indicated she did not want to have surgery or injection and stated "it is liveable for now." (*Id.*)  Dr. Grob prescribed a knee brace.  (*Id.*)

In March 2013, Plaintiff met with physiatrist Robert W. Mauthe, M.D., for consultation and rehabilitation regarding her right knee pain.  (R. 456.)  Plaintiff reported that Dr. Grob and Dr. Brislin offered surgery but she wanted to know if anything else could be done.  (*Id.*)  Dr. Mauthe examined Plaintiff's February 2013 diagnostic testing and believed there could be a new tear. (*Id.*)  He noted that Plaintiff wore a knee brace, joined a gym, had "lost a considerable amount of weight," and had been on Vicodin but had weaned herself off all medications.  (R. 457.)   Dr. Mauthe concluded that Plaintiff remained symptomatic and offered

9

viscosupplementation but Plaintiff preferred to pursue platelet therapy.  (*Id.*)  He concluded that Plaintiff could work sedentary to light duty.  (*Id.*)

After an initial assessment on April 2, 2013, because of her right knee pain, Plaintiff again met with Paul Lerman, M.D., at Main Line Spine on April 22, 2013, for the platelet injection.  (R. 448-53.)  She described the pain as fiery, sharp, shooting, stabbing and intermittent with a range of 5/10 and 9/10 at its worst.  (R. 448.)  He noted that sitting, standing, and walking tolerances were not affected by her condition.  (R. 448.)  Dr. Lerman performed a right knee procedure of joint aspiration and injection and noted that Plaintiff was to follow up with Dr. Mauthe in four weeks.  (R. 449.)

Plaintiff returned to Dr. Mauthe in May 2013.  (R. 455.)  He observed that Plaintiff was recovering from platelet injection, was back at the gym, and had no instability.  (*Id.*)  On June 18, 2013, Dr. Mauthe observed good stability, continued weight loss, and commented that he did not have Plaintiff on any medication.  (R. 454.)

On September 12, 2013, Plaintiff returned to Dr. Grob, who reported that Plaintiff said she had "good days and bad days" with her knee.  (R. 459.)  Plaintiff also said that an injection had not helped and Dr. Grob administered a steroidal injection.  (*Id.*)

On September 18, 2013, Plaintiff met with Dr. Mauthe and

reported that neither the PRP nor corticosteroid injection were of any benefit.  (R. 471.)  However, she said the knee brace had helped.  (*Id.*)  Dr. Mauthe noted that Plaintiff was unable to return to her work as a corrections officer and she was too young for a knee replacement.  (*Id.*)

Plaintiff returned to Dr. Grob on December 12, 2013, and declined more injections, reporting that the pain affected her lifestyle but she was "not ready" for another arthroscopy, knee replacement surgery, or viscosupplementaion.  (R. 511.)

On December 17, 2013, state agency medical consultant, Mark Bohn, M.D., analyzed Plaintiff's medical files and concluded the following: Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently; she could stand or walk or sit for about six hours in an eight-hour day; she had limited use of her right knee; she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she could never climb ladders, ropes, or scaffolds; and she should avoid exposure to extreme cold, vibration, and hazards.  (R. 67-68.)  Dr. Bohn reviewed Plaintiff's activities of daily living, including her light chores, physical therapy, and regular activities, noting that she used a knee brace.  (R. 68-69.)  In light of those activities and her medical records, Dr. Bohn concluded that Dr. Mauthe's opinion was an overestimate of severity and was not consistent with the medical evidence of record.  (R. 69.)

On December 18, 2013, Plaintiff again saw Dr. Mauthe.  (R. 477.)  He noted that Plaintiff was on an exercise program and he did not have her on any medications but she took Advil or Tylenol, and she continued to report that the brace helped.  (*Id.*)  He planned to see Plaintiff again in three months.  (*Id.*)

At Plaintiff's March 19, 2014, appointment with Dr. Mauthe, she continued to report knee pain, use of over-the-counter medications and a knee brace, and continuation of the home exercise program.  (R. 476.)  She also reported that her knee gives way on her and she had some falls.  (*Id.*)  Dr. Mauthe planned to discharge Plaintiff to be seen as needed and noted that Plaintiff planned to see Dr. Grob to obtain his surgical opinion.  (*Id.*)

On December 18, 2014, Plaintiff saw Ms. Reaser at Carbon Medical Associates for general follow up.  (R. 488.)  She reported that she was "overall doing okay" and she had "overall joint pains throughout" that were markedly worse when she was working but she quit her job and applied for disability based on severe joint pains and inability to perform her duties.  (*Id.*)  Plaintiff denied any ambulatory dysfunction, poor balance, or limitations of movement.  (*Id.*)  On examination, Ms. Reaser observed that Plaintiff walked with a normal gait, had 5/5 strength, and had no obvious instability in her lower extremities.  (R. 489.)

2.   **Hearing Testimony**

Plaintiff testified that she had received worker's

12

compensation until her claim was settled in June of 2014 for
$125,000.  (R. 42-43.)   She said she did not lift anything heavy
in performing her daily activities, climbing stairs was hard for
her, she elevated her legs due to pain, and she had learned to
avoid doing things that made her knee swell or hurt.  (R. 46.)
Plaintiff indicated that it was hard for her to stand or walk for
long periods of time.  (*Id.*)  Plaintiff reported that basically her
pain had remained the same and her pain levels depended on her
level of activity.  (R. 48.)

     Relevant to Plaintiff's objection regarding the information
clerk position, Plaintiff testified that she worked full-time at
the Area Agency for the Aging where she answered and transferred
calls, greeted people, talked to the elderly, and occasionally
entered data into the computer.  (R. 51-52.)  She also indicated
she was not busy all day and had time to go on the internet.  (R.
52.)

     The ALJ asked the VE to consider a hypothetical individual
with the following limitations: she could lift and carry twenty
pounds occasionally and ten pounds frequently; she could sit,
stand, or walk for up to six hours with normal breaks and lunch
periods; she was restricted from hazardous work environments that
would require her to climb ladders, scaffolds, be around
unprotected dangerous machinery or excessive vibrations; and she
could not work in an environment where there would be extremes of

13

temperature and humidity.  (R. 56.)  The VE testified that, if the
information clerk position were vocationally relevant, Plaintiff
would be able to perform the position.  (*Id.*)  The VE testified
that the individual would also be able to perform the light duty,
semi-skilled position of hotel front desk clerk and file clerk, and
she would be able to perform the light duty unskilled office helper
or ticket sales positions.  (R. 57-58.)

In a second hypothetical, the ALJ asked the VE to consider the
same hypothetical claimant in terms of vocational profile and
medical history but also add limitations identified in Plaintiff's
testimony regarding difficulty with her knees and shoulders and how
that affects her ability in terms of walking, standing, and
climbing stairs, and the difficulty she has in lifting and carrying
objects.  (R. 58.)  The VE responded that there would be no work
available based on Plaintiff's testimony.  (R. 59.)

## 3.   __ALJ Decision__

ALJ Zack issued her decision on June 6, 2015.  (R. 21-31.)  He
made the following Findings of Fact and Conclusions of Law:

> 1.   The claimant meets the insured status
>      requirements of the Social Security Act
>      through December 31, 2017.
>
> 2.   The claimant engaged in substantial
>      gainful activity during 2012 (20 CFR
>      404.1520(b) and 404.1571 et seq.).
>
> 3.   However, there has been a continuous 12-
>      month period(s) during which the
>      claimant did not engage in substantial
>      gainful activity.  The remaining

14

findings address the period(s) the
claimant did not engage in substantial
gainful activity.

4.   The claimant has the following severe
impairments: status post surgery on
right knee for meniscal tear, recurrent
tear, tri-compartment osteoarthritis of
right knee, degenerative joint disease
of right knee and mild degenerative
joint disease of her hands (20 CFR
404.1520(c)).

5.   The claimant does not have an impairment
or combination of impairments that meets
or medically equals the severity of one
of the listed impairments in 20 CFR Part
404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525 and 404.1526).

6.   After careful consideration of the
entire record, the undersigned finds
that the claimant has the residual
functional capacity to perform light
work as defined in 20 CFR 404.1567(b)
except that she is able to sit for 6
hours, stand for 6 hours and walk for 6
hours.  She cannot climb ladders, ropes
or scaffolds, or be around unprotected
dangerous heights, machinery or
vibrations.  She cannot be exposed to
extremes of temperature or humidity.

7.   The claimant is capable of performing
past relevant work as an information
clerk.  This work does not require the
performance of work-related activities
precluded by the claimant's residual
functional capacity (20 CFR 404.1565).

8.   The claimant has not been under a
disability, as defined in the Social
Security Act, from September 21, 2011,
through the date of this decision (20
CFR 404.1520(f)).

(R. 23-31.)

15

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

---

[1]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

16

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step four of the sequential evaluation process when the ALJ found that Plaintiff could perform past relevant work as an information clerk. (R. 29.)  ALJ Zack alternatively found that Plaintiff had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.  (R. 30.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft*

*v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence–-particularly certain types of evidence (e.g., that offered by treating physicians)–-or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence

18

approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . . the *Cotter* doctrine is not implicated." *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d

1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings
of the Commissioner of Social Security as to any fact, if supported
by substantial evidence, shall be conclusive . . .").  "However,
even if the Secretary's factual findings are supported by
substantial evidence, [a court] may review whether the Secretary,
in making his findings, applied the correct legal standards to the
facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d
Cir. 1983) (internal quotation omitted).  Where the ALJ's decision
is explained in sufficient detail to allow meaningful judicial
review and the decision is supported by substantial evidence, a
claimed error may be deemed harmless. *See, e.g., Albury v. Comm'r
of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not
precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d
Cir. 2000) ("[O]ur primary concern has always been the ability to
conduct meaningful judicial review.").  An ALJ's decision can only
be reviewed by a court based on the evidence that was before the
ALJ at the time he or she made his or her decision. *Matthews v.
Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's decision
should be reversed or remanded because 1) the ALJ's conclusion that
Plaintiff was capable of performing light work was not supported by
substantial evidence; and 2) the ALJ's conclusion that Plaintiff's
past relevant work included the job of information clerk is legally

20

erroneous and not supported by substantial evidence.  (Doc. 14 at 8.)

**A.    Residual Functional Capacity Assessment**

Plaintiff maintains that the medical evidence supporting the ALJ's RFC "is conflicting at best" and specifically asserts that the finding that Plaintiff could stand for six hours and walk for six hours is not supported by substantial evidence.  (Doc. 14 at 10, 12.)  Defendant contends the ALJ properly weighed the five medical opinions that concluded Plaintiff was capable of performing light work in making his RFC assessment.  (Doc. 15 at 13.)  The Court concludes Plaintiff has not shown that the ALJ erred on the basis alleged.

Plaintiff's brief argument regarding this claimed error does not warrant a detailed discussion in that Plaintiff has not shown that the ALJ's RFC determination was not supported by substantial evidence.  While she asserts that some opinion evidence is incompatible with the ALJ's light duty RFC determination (Doc. 14 at 10-12), she does not discuss or discount evidence which is compatible with the ALJ's RFC determination.  For example, Plaintiff does not argue that Dr. Bohn's opinion was not entitled to great weight or that it was not "supported by the balance of the medical records" (R. 29).  This is especially notable in view of the many medical source findings that Plaintiff was capable of performing light work including that of Dr. Mauthe, a treating

21

physician (R. 457), primary care treating physician, Dr. Lipson (R. 242), and Dr. DiBenedetto, an examining physician (R. 138). Further, Plaintiff does not adequately address why the ALJ's reliance on the FCE conclusion that Plaintiff was capable of light-medium work under DOT classification (R. 29) was error.  Because the record shows that significant evidence supports the ALJ's conclusion and Plaintiff has not shown that this evidence does not constitute "substantial evidence," Plaintiff has not shown the ALJ erred on the basis alleged.

**B.   *Past Relevant Work***

Plaintiff asserts that the ALJ erred in finding that Plaintiff's job of "information clerk" was past relevant work. (Doc. 14 at 12.)  Defendant responds that the ALJ properly concluded that Plaintiff could perform her past relevant work as an information clerk.  (Doc. 15 at 18.)  The Court concludes Plaintiff has not shown that the ALJ erred on the basis alleged.

ALJ Zack set out the following rationale for his step four determination:

> The argument presented at the hearing was that this was a "county job" and the claimant was not expected to really work. The undersigned does not accept this argument.  Both light duty jobs lasted for more than six months and her pay for each was well over the presumptive substantial gainful activity.  The vocational expert classified these jobs as data entry, sedentary semiskilled employment SVP 4 and information clerk which was sedentary semiskilled work SVP 4.  The claimant performed both these

jobs long enough to have learned them.  The
data entry job required typing or keyboard
skills.  The information clerk job answering
phones, directing calls and greeting people
is well within the claimant's residual
functional capacity.  It would be
unreasonable to conclude or presume that
"county jobs" are not show, nor work jobs
without any objective evidence to corroborate
that argument.  The claimant has testified
that she worked at these jobs until November
2012.

In comparing the claimant's residual
functional capacity with the physical and
mental demands of this work, the undersigned
finds that the claimant is able to perform
the information clerk job as actually and
generally performed.  The typing requirement
for competitive employment as a data entry
clerk is above the claimant's ability and
this job is not available or considered.

Although the claimant is capable of
performing past relevant work, there are
other jobs existing in the national economy
that she is able to perform.  Therefore, the
Administrative Law Judge makes the following
alternative findings for step five of the
sequential evaluation process.

In the alternative, considering the
claimant's age, education, work experience,
and residual functional capacity, the
claimant has also acquired work skills from
past relevant work that are transferable to
other occupations with jobs existing in
significant numbers in the national economy
(20 CFR 404.1569, 404.1569(a) and
404.1568(d).

In determining whether a successful
adjustment to other work can be made, the
undersigned must consider the claimant's
residual functional capacity, age, education,
and work experience in conjunction with the
Medical-Vocational Guidelines, 20 CFR Part
404, Subpart P, Appendix 2.  If the claimant

can perform all or substantially all of the
exertional demands at a given level of
exertion, the medical-vocational rules direct
a conclusion of either "disabled" or "not
disabled" depending upon the claimant's
specific vocational profile (SSR 83-11).
When the claimant cannot perform
substantially all of the exertional demands
of work at a given level of exertion and-or
has nonexertional limitations, the medical-
vocational rules are used as a framework for
decisionmaking unless there is a rule that
directs a conclusion of "disabled" without
considering the additional exertional and/or
nonexertional limitations (SSRs 83-12 and 83-
14).  If the claimant has solely
nonexertional limitations, section 204.00 in
the Medical-Vocational Guidelines provides a
framework for decisionmaking (SSR 85-15).

      The vocational expert was asked if any
occupations exist which could be performed by
an individual with the same age, education,
past relevant work experience, and residual
functional capacity as the claimant, and
which require skills acquired in the
claimant's past relevant work but no
additional skills.  The vocational expert
responded and testified that representative
occupations such an individual could perform
include: front desk clerk DOT#238.367-018
(500 jobs in NEPA), file clerk DOT#387.034
(500 jobs in NEPA), and unskilled work as
office helper DOT#239.567-010 (500 jobs in
NEPA), and ticket sales DOT#239.261-030 (500
jobs in NEPA).

      Pursuant to SSR 00-4p, the undersigned
has determined that the vocational expert's
testimony is consistent with the information
contained in the Dictionary of Occupational
Titles.

      Accordingly, although the claimant's
additional limitations do not allow the
claimant to perform the full range of light
work, considering the claimant's age,
education and transferable work skills, a

24

finding of "not disabled" is appropriate
under the framework of Medical-Vocational
Rule 202.07.

(R. 29-31.)

Plaintiff argues that, based on her testimony and her former counsel's argument, it is undisputed that she had "minimal duties" and "no demands" in her information clerk job and, therefore, pursuant to 20 C.F.R. § 404.1573(b) and (c)(5), the job should not be considered substantial gainful activity.[2]  (Doc. 14 at 14.) Plaintiff maintains the ALJ unreasonably rejected her testimony and, if he had doubts, he should have further developed the record on the issue.  (Doc. 14 at 14-15.)  In support of her argument that the Area Agency on Aging position was not substantial gainful activity, Plaintiff also cites the letter dated September 1, 2015, submitted to the Appeals Council with Plaintiff's counsel's September 2, 2015, letter in which Cheri Mae Santore, a former Carbon County administrator, stated that Plaintiff did not perform any specific duties and was just paid to show up at her Area Agency on Aging job.  (R. 187, 188.)

The September 1, 2015, letter cannot be used to determine if

_____

[2]  The testimony to which she refers is a statement which is partly "inaudible" in the hearing transcript.  (*See* Doc. 14 at 14 n.11 (citing R. 52, 185).)  At the hearing, Plaintiff's attorney asked her if she was "busy all day long."  (R. 52.)  The transcribed response is "I can say I [INAUDIBLE] off a lot" and added "[l]ooking at the internet."  (*Id.*)  In a letter to the Appeals Council dated October 19, 2015, Plaintiff's counsel asserts that Plaintiff testified that she "stuffed off all day."  (R. 185.)

the ALJ's determination at step four was supported by substantial evidence because the letter was not part of the record when he issued his decision.  *Matthews*, 239 F.3d at 593.  Thus, to show the ALJ erred on the basis alleged, Plaintiff must show, absent the letter evidence, that substantial evidence does not support the ALJ's determination that her information clerk position was substantial gainful activity.

20 C.F.R. § 404.1573(b) provides in relevant part: "If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer, . . . this does not show that you are working at the substantial gainful activity level."  Section 404.1573(c) provides that "[i]f your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity."  Examples of such special conditions include situations in which "[y]ou are permitted to work at a lower standard of productivity or efficiency than other employees."  20 C.F.R. § 404.1573(c)(5).

Regarding Plaintiff's reliance on her testimony and former counsel's argument (Doc. 14 at 14), it should be noted that statements of counsel are not evidence and are not considered such in reviewing the record.  *See*, *e.g.*, *Kita v. Comm'r of Social Security*, No. o3-2514, 2009 WL 1464252, at *7 (W.D. Mich. May 18, 2009).  At the outset of the ALJ hearing, Plaintiff's counsel

stated that the light duty positions really were not positions,
asserting that "she really didn't have to do anything . . . [,]
[s]he didn't have any real responsibilities."  (R. 39.)  Contrary
to counsel's statement that Plaintiff did not do anything at the
light duty county jobs, Plaintiff testified regarding the Area
Agency on Aging position that "a lot of calls came in" and she had
to transfer them to caseworker offices, she greeted people when
they came in, and did data entry.  (R. 51-52.)  Although her
testimony also indicates she was not busy throughout the day and
she spent time on the internet (R. 52), such testimony does not
show that the position was exempted from being considered
substantial gainful activity--it does not show that she was "of
little or no use to [her] employer" or that she was "permitted to
work at a lower standard of productivity or efficiency than other
employees," as required by § 404.1573(b) and (e)(5).  Thus,
Plaintiff's argument that her testimony alone shows her information
clerk position was not substantial gainful activity pursuant to the
relevant regulation fails.

Nor has Plaintiff shown that ALJ Zack erred by not expanding
the record on the issue.  Although the duty to assist the claimant
and develop the record is well established, the duty is not
unlimited.  The requirement does not necessarily come into play
where there was sufficient evidence in the record for the ALJ to
make his decision.  *Moody v. Barnhart*, 114 F. App'x 495, 501 (3d

Cir. 2004) (not precedential); *see also Griffin v. Commissioner of Social Security*, 303 F. App'x 886, 890 n.5 (3d Cir. 2009) (not precedential).  As noted by Defendant, the ALJ is entitled to assume that Plaintiff's counsel "'is making his strongest case for benefits.'" (Doc. 15 at 21 (quoting *Batts v. Barnhart*, 2002 WL 32345745, at *8 (E.D. Pa. Mar. 29, 2002)).)  Plaintiff's counsel knew that the classification of the information clerk position was at issue and he did not seek to provide further clarification or keep the record open to submit additional evidence.  (*See* R. 39, 51-52, 56, 61.)  Given that the ALJ was entitled to credit Plaintiff's testimony about her duties related to the position (R. 51-52), Plaintiff has not met her burden of showing the ALJ erred by not expanding the record.  (Doc. 14 at 16.)

Finally, Plaintiff maintains that the Santore letter dated September 1, 2015, and submitted to the Appeals Council with Plaintiff's counsel's September 2, 2015, letter (R. 187, 188), supports her step four claim because it satisfies the requirements necessary and confirms the nature of her work.  (Doc. 14 at 16-17 (citing *Hardee v. Comm'r of Social Security*, 188 F. App'x 127, 130 (3d Cir. 2006)); Doc. 18 at 7.)  This assertion requires the Court to determine whether remand is required for consideration of new evidence.

Pursuant to 42 U.S.C. § 405(g), "when the claimant seeks to rely on evidence that was not before the ALJ, the district court

may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) (citations omitted).  The cases require that the additional evidence satisfy three criteria: 1) the evidence is "new" and not merely cumulative of what is in the record; 2) the evidence is "material" meaning that is it relevant and probative; and 3) there is "good cause" for not presenting the evidence to the ALJ.  *Szubak v. Sec'y of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984) (citations omitted).

Here "good cause" is the requirement at issue. "Good cause" has been defined as "some justification for the failure to acquire and present" the evidence to the ALJ.  *Szubak*, 745 F.2d at 834. *Szubak* recognized that a claimant "should generally be afforded only one fair opportunity to demonstrate eligibility for benefits under any one set of circumstances" and presentation of new evidence should not be an "end-run method of appealing an adverse ruling."  *Id.*  The "good cause" requirement is designed to prevent a claimant from obtaining "another bite at the apple" if the ALJ decides that the claimant is not disabled.  *Id.*  In furtherance of these objectives, plaintiffs have been required to provide a "logical reason" why the additional evidence was not, or could not have been, presented during the administrative proceedings.  *See*, *e.g.*, *Cruz-Santos v. Callahan*, No. Civ. A. 97-439, 1998 WL 175936

at *3 (D.N.J. Apr. 7, 1998).

Plaintiff asserts there was "good cause" for not submitting the additional evidence because the ALJ did not request "objective evidence" corroborating the argument that Plaintiff's county job was a "make work" position and "[t]he purported need for additional 'objective evidence' did not become known to Bjorkman or her former counsel until after the ALJ issued his decision."  (Doc. 14 at 16-17 (citing R. 28); Doc. 18 at 7.)  Plaintiff adds that the letter did not exist before the ALJ closed the record in the case.  (Doc. 18 at 7.)

First, the fact that the letter did not exist when the ALJ closed the case is not a basis to find "good cause" because Plaintiff has not presented evidence that the letter *could have not have been* obtained earlier.

Second, the argument that "good cause" exists because the ALJ did not tell Plaintiff or her hearing counsel that objective evidence would be required to show that her county job was a "make work" position is not the type of situation which requires remand. As noted in *DeMoss v. Heckler*, 706 F. Supp. 303, 310-11 (D. Del. 1988), good cause is not satisfied where a plaintiff's counsel simply did not anticipate the line of reasoning an ALJ would take in rendering his decision.  "If this were true, every time that a party received an adverse decision by the Secretary, it would be claimed that the decision making process of the A.L.J. was

30

misunderstood and, therefore, the party should be given another chance to counter the A.L.J.'s decision." *Id.* at 311.

Here the hearing transcript clearly indicates that the nature of Plaintiff's light duty work was an issue being considered by the ALJ, Plaintiff's counsel was aware of the issue, and counsel chose only to present Plaintiff's testimony regarding the duties performed (*see*, R. 39, 51-52, 56, 60). As set out previously, contrary to counsel's statement that Plaintiff did not do anything at the light duty county jobs, Plaintiff testified regarding the Area Agency on Aging position that "a lot of calls came in" and she had to transfer them to caseworker offices, she greeted people when they came in, and did data entry. (R. 51-52.)  Although her testimony also indicates she was not busy throughout the day and she spent time on the internet (R. 52), such testimony does not show that the position was exempted from being considered substantial gainful activity under the applicable regulations.  In short, it was up to Plaintiff and her counsel to present evidence supporting the "make work" job claim and they did not satisfactorily do so--they chose not to present objective evidence in support of the claim and seek to do so now because the ALJ specifically found such evidence lacking (R. 28).

In this context, the rationale now provided by Plaintiff can only be considered an attempt to obtain a "second bite of the apple," *Szubak*, 745 F.2d at 834--Plaintiff had a fair opportunity

31

to demonstrate eligibility for benefits and, after receiving an adverse ruling from ALJ Zack, she submitted evidence which could have been submitted earlier and considered by the ALJ.  As this is a case where the reason for the late submission of evidence runs counter to the purpose of § 405(g), the Court concludes remand is not required for the consideration of new evidence.

### V. Conclusion

For the reasons discussed above, the Court concludes Plaintiff's appeal of the Acting Commissioner's decision is properly denied.  An appropriate Order is filed simultaneously with this Memorandum.

> S/Richard P. Conaboy
> RICHARD P. CONABOY
> United States District Judge

DATED: November 16, 2016